Mark A. Holmgren, Esq.
Holmgren Law Firm
1166 E. Warner Rd., Suite 101
Gilbert, AZ 85296
State Bar No. 019132
mark@holmgrenlawfirm.com
480-385-7599

*Attorney for the Plaintiffs*
Olen Properties Corp. and
One North Scottsdale Corp.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Olen Properties Corp., a Florida corporation, and One North Scottsdale Corp., an Arizona corporation, <br><br> Plaintiff, <br><br> vs. <br><br> Danco Plumbing Inc., an Arizona corporation, Uponor Inc., an Illinois corporation, and Doe Defendants 1 through 50, <br><br> Defendants. | Case No.:  2:23-cv-00886-MTM <br><br> SECOND AMENDED COMPLAINT |

Olen Properties Corp., a Florida corporation, and One North Scottsdale

Corp., an Arizona corporation, (collectively, "Plaintiffs"), by and through their

undersigned counsel, complains against the Defendants as follows:

///

## PARTIES

1.      Plaintiff Olen Properties Corp. ("Olen") is a Florida corporation, organized and existing under the laws of the State of Florida, with its principal place of business at Seven Corporate Plaza, Newport Beach, California.

2.      Plaintiff One North Scottsdale Corp. ("One North") is an Arizona corporation, organized and existing under the laws of the State of Arizona, with its principal place of business at 7355 E. Thompson Parkway, Scottsdale, Arizona. Plaintiff One North is the current owner of the multi-family apartment complex known as One North Scottsdale, located at 7355 E. Thompson Parkway, Scottsdale, Arizona, more particularly described as Lot 1, of Replat Parcel 1 of One Scottsdale, According to the Plat of Record in the Office of the County Recorder of Maricopa County, Arizona, recorded in Book 1115 of Maps, Page 41, including all improvements, structures, fixtures, utilities and components thereon and therein (the "Apartments").

3.      Defendant Danco Plumbing, Inc. ("Danco") is an Arizona corporation, organized and existing under the laws of the State of Arizona, and registered to do business in the State of Arizona, with its principal place of business at 6829 N. 55th Street, Glendale, Arizona. On information and belief, Defendant Danco is an Arizona-licensed plumbing contractor and was the plumbing subcontractor for the construction of the Apartments.

- 2 -

4884-1485-7864, v. 1

4.      Defendant Uponor, Inc. ("Uponor") is an Illinois corporation, duly organized and existing under the laws of the State of Illinois, with its principal place of business located at 5925 148th Street West, Apple Valley, Minnesota. Defendants Uponor, Danco, and Doe Defendants are collectively referred to herein as "Defendants."

5.      Plaintiffs are unaware of the basis of liability as to some or all of the fictitious Defendants sued as Doe Defendants 1 through 50, inclusive, but believes that their liability arises out of the same general facts, transactions and occurrences set forth in this Complaint. Plaintiffs are informed and believe, and allege based on information and belief, that each of the Doe Defendants are legally responsible in some manner for the events and damages referred to herein, and legally and proximately caused damage to Plaintiffs.  Plaintiffs have reviewed documentation and information currently available to them to ascertain the identities of Doe Defendants. Plaintiffs will move to amend this Complaint to assert theories of liability against these fictitiously named Doe Defendants when they have been ascertained.

## JURISDICTION

6.      This court lacks subject matter jurisdiction.

7.      Plaintiffs commenced this action in the Superior Court of the State of Arizona, Maricopa County on January 20, 2023.

- 3 -

4884-1485-7864, v. 1

8.      On May 19, 2023, Uponor filed a Notice of Removal on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, and the case was removed to this Court.

9.      On June 6, 2023, this Court entered an order staying the litigation pending mediation [Doc. 14].

10.     The parties participated in mediation, and on October 11, 2023, this Court ordered the parties to jointly file a status report on the status of the case [Doc. 18].

11.     The parties filed a joint status report on October 19, 2023 [Doc. 19] informing the Court of Plaintiffs intention to seek leave to amend the First Amended Complaint to add Danco as a defendant.

12.     The Court held a telephonic status conference on October 24, 2023, at which the Court granted Plaintiffs leave to amend to add Danco as a defendant [Doc. 21].

13.     The addition of Danco as a defendant divests this court of diversity jurisdiction under 28 U.S.C. § 1332.

14.     There are no questions arising under federal law, which would otherwise grant this court subject matter jurisdiction under 28 U.S.C. § 1331.

## **GENERAL ALLEGATIONS**

15.     At all relevant times herein, Uponor designed, manufactured, marketed, advertised, sold and/or distributed products used in residential plumbing

- 4 -

4884-1485-7864, v. 1

systems, both directly and indirectly, by and through their entities, employees, agents, predecessors-in-interest and other representatives, including but not limited to red, blue and translucent cross-linked polyethylene tubing ("PEX"), which PEX was used in the plumbing systems at the Apartments.

16.     Plaintiffs are informed and believe and allege based on information and belief, that Defendants did not reveal, disclose, notify or inform Plaintiffs, Plaintiffs' predecessors-in-interest, or those with whom Defendants contracted to design, construct, inspect, manage, maintain and/or repair the Apartments, of the conditions observed during the design, construction, installation, inspection, or during the maintenance or repair of the Apartments, or components thereof.

17.     Plaintiffs and their predecessors-in-interest reasonably relied on the implied and express representations and affirmations of fact by Defendants that the Apartments were free from construction, design and/or manufacturing defects and premature and unreasonable deterioration.

18.     Plaintiffs are informed and believe and allege based on information and belief, that Defendants did not reveal, disclose, notify, or inform Plaintiffs or their predecessors-in-interest of any defective conditions affecting the Apartments, including but not limited to manufacturing and/or product defects related to the use of PEX in the plumbing systems of the Apartments.

19.     Plaintiffs are informed and believe and allege based on information and belief, that prior to Plaintiffs' acquisition of the Apartments, Defendants, and

- 5 -

4884-1485-7864, v. 1

each of them, promised, warranted, and/or agreed to and did make repairs to the Apartments, causing Plaintiffs to reasonably rely on Defendants' promises, warranties, agreements, and actions. This conduct lulled Plaintiffs into deferring this action.  During this period in which Defendants made such promises, warranties, agreements and repairs, all statutes of limitation were tolled, and Defendants are estopped from claiming that the alleged expiration of any applicable statute of limitation bars the within action.

20.    Plaintiffs are informed and believe and allege based on information and belief, that Plaintiffs and their tenants have sustained and suffered consequential damages resulting from Defendants' acts and/or omissions, including, without limitation, physical injury and/or destruction of real and personal property, lost rental income, loss of use of the Apartments, consequential damages to the Apartments and have or will incur relocation expenses for its tenants while repairs are made to the Apartments to address design, construction and manufacturing defects.

21.    Plaintiffs are informed and believe and allege based on information and belief, that the PEX pipes, joints, fittings, and related fixtures and components used and installed in the plumbing system of the Apartments were defectively manufactured and/or installed.

- 6 -

22.     The defectively manufactured and/or installed PEX has caused damage and will continue to cause damage to the Apartments and residents' personal property.

23.     The defectively manufactured and/or installed PEX cause the PEX pipes, fittings, fixtures and components to, among other things, crack, leak, oxidize, embrittle, lose elasticity, decouple, fracture, rust, corrode and otherwise prematurely deteriorate and function improperly and defectively so as to create unsafe and unhealthy conditions and damage to real and personal property.

24.     Plaintiffs are informed and believe and allege based on information and belief, that the plumbing systems at the Apartments were constructed using PEX manufactured and supplied by Uponor.

25.     Plaintiffs are informed and believe and allege based on information and belief, that the PEX manufactured and supplied by Uponor suffers from design and/or manufacturing defects that cause the PEX to be predisposed to premature oxidative degradation, micro-cracking, embrittlement, leaks, damage, deterioration, through-wall cracking, loss of use and other failures and damages ("PEX Defects"). The PEX Defects cause the PEX pipes to crack, fail and leak when put to their intended use and, thereby, reduce their normal, intended useful life.

26.     Before designing, manufacturing, advertising/marketing, distributing and/or selling PEX with the PEX Defects, Uponor failed to take appropriate steps to ensure that its products were safe for their intended use.

- 7 -

4884-1485-7864, v. 1

27.     Uponor knew or should have known that the PEX Defects were not suitable for use within water plumbing systems and that the PEX suffered from the PEX Defects and caused the damages alleged herein.

28.     The PEX Defects have caused damage to, and systemic failure of, the plumbing systems at the Apartments and will continue to cause Plaintiffs to incur damages through no fault of their own.

29.     Plaintiffs seek damages sustained by Plaintiffs that Defendants proximately caused by the use of PEX with the PEX Defects in the Apartments.

30.     Defendants, and each of them, knowingly, actively, and/or negligently concealed and failed to disclose relevant information to Plaintiffs related to the PEX Defects.

31.     Specifically, Defendants concealed evidence of premature deterioration and failure of PEX and PEX Defects in the Apartments by, among other things, making or directing spot repairs when leaks were reported.

32.     Because the PEX Defects are latent, Plaintiffs could not have reasonably discovered the true nature of the defects until shortly before the filing of this Complaint.

33.     Any applicable statutes of limitation were tolled by Defendants knowing and active concealment and denial of the facts alleged herein.

<u>FIRST CAUSE OF ACTION</u>
NEGLIGENCE
(Against All Defendants)

- 8 -

4884-1485-7864, v. 1

34.     Plaintiffs incorporate herein by reference all allegations included in paragraphs 1-33.

35.     Defendants owed Plaintiffs a duty to exercise reasonable and ordinary care in the supply, use, manufacture, installation, distribution, construction, inspection, marketing, and sale of PEX manufactured by Uponor in the Apartments.

36.     Defendants negligently, carelessly, tortiously, and/or wrongfully failed to use reasonable care in the supply, use, manufacture, installation, distribution, construction, inspection, marketing, and sale of PEX manufactured by Uponor un the Apartments.

37.     Defendants knew or should have known that Plaintiffs would be substantially damaged thereby, as alleged herein.

38.     The PEX Defects and/or the defective installation of PEX has resulted in and will result in foreseeable damage as alleged herein.

39.     Defendants were under a duty to exercise ordinary care to avoid reasonably foreseeable injury to purchasers, occupants and users of the real property, and all improvements, fixtures, and components thereon or therein, including Plaintiffs, and knew or should have foreseen with reasonable certainty that Plaintiffs would suffer the damages set forth herein if Defendants failed to perform their duties in a proper and workmanlike manner.

40.     Defendants failed and neglected to properly develop, design, test, inspect, construct, install, manufacture, supply, distribute, advertise, market, and/or

- 9 -

4884-1485-7864, v. 1

sell the PEX in and for the Apartment, such that the PEX products used therein are defective and prematurely failing.

41. As a direct and proximate result of Defendants' negligence, carelessness and breaches of its duty of reasonable and ordinary care, Plaintiffs have suffered damages, including but not limited to the costs of repairing and replacing the PEX within the Apartment plumbing system, the interruption of Plaintiffs' business, lost rental income, and other consequential, incidental, punitive, and foreseeable damages in excess of the jurisdictional minimum of this Court in precise amounts to be proved at trial.

SECOND CAUSE OF ACTION
NEGLIGENT MISREPRESENTATION
(Against All Defendants)

42. Plaintiffs incorporate herein by reference all allegations included in paragraphs 1-41.

43. Plaintiffs are informed and believe, and thereon allege, that Defendants, and each of them, knew and intended that the Apartments and plumbing products incorporated into the Apartments would be used by Plaintiffs, and all predecessors- and successors-in-interest thereto, for ordinary and residential purposes common to such developments.

44. Plaintiffs are informed and believe, and thereon allege that Defendants, and each of them, represented, expressly and implicitly, to each other and/or third parties, that the Apartments and the components and fixtures therein, were or would

- 10 -

4884-1485-7864, v. 1

be constructed installed, manufactured and repaired in compliance with applicable plans, specifications, manufacturing and/or installation guidelines, applicable laws, codes, regulations, and/or ordinances, would be free from construction and manufacturing defects and fit for ordinary residential purposes, and was or would incorporate non-defective products and materials, which products and materials would be installed in strict accord with all manufacturer recommendations and instructions, and was or would be maintained in good working order, condition, and repair.

45.    Plaintiffs are informed and believe, and thereon allege, that Defendants, and each of them, made the aforementioned representations in a careless and reckless manner and with no reasonable basis for believing them to be true; these representations were false and were made with the intent to deceive and induce Plaintiffs to forebear any inquiry as to whether there were any such defects or deficiencies at the Apartments, including the PEX Defects.

46.    Plaintiffs are informed and believe, and thereon allege, that Defendants, and each of them, made these representations to each other and to third parties with the intent and/or reasonable expectation that these representations would be relied upon by each other and/or third parties and repeated to Plaintiffs.

47.    Plaintiffs are informed and believe, and thereon allege, that prior to, concurrent with and after Plaintiffs' acquisition of the Apartments, Defendants misrepresented, both expressly and implicitly, to Plaintiffs and their predecessors-

- 11 -

4884-1485-7864, v. 1

in-interest that the Apartments, and the fixtures and components therein, had been designed, manufactured, installed, constructed, inspected, maintained, and/or repaired so that no deficiencies or defects existed.

48.     These misrepresentations and omissions were made orally and in writing to Plaintiffs by Defendants and to Plaintiffs' predecessors-in-interest to induce Plaintiffs to purchase the Apartments, and Plaintiffs, relying on Defendants' representations, did purchase the Apartments.

49.     Defendants made the representations stated herein in a careless and reckless manner, and with no reasonable basis for believing them to be true; these representations were false and were made with the intent to deceive and induce Plaintiffs to forebear any inquiry as to whether there were any defects at the Apartments.

50.     Actually, and justifiably relying upon such negligent misrepresentations as alleged in this Complaint, Plaintiffs purchased the Apartments containing the defectively manufactured and/or installed PEX. The facts which have been misrepresented to Plaintiffs were material to Plaintiffs' agreement to purchase the Apartments. Had Plaintiffs been aware of the true facts, Plaintiffs would not have agreed to purchase the Apartments.

51.     As a direct and proximate result of the negligent misrepresentations of Defendants, and each of them, Plaintiffs have suffered actual and consequential

- 12 -

4884-1485-7864, v. 1

damages in excess of the jurisdictional minimum of this Court in precise amounts to be proven trial.

THIRD CAUSE OF ACTION
BREACH OF IMPLIED WARRANTY
(Against Danco)

52.     Plaintiffs incorporate herein by reference all allegations included in paragraphs 1-51.

53.     At the time Plaintiffs purchased the Apartments, Danco impliedly warranted to Plaintiffs and their predecessors-in-interest that the Apartments were free from defects, constructed in a workmanlike manner, and fit for ordinary residential, community and apartment purposes.

54.     Plaintiffs are informed and believe and allege based on information and belief, that on or about the time the Apartments were constructed, Danco impliedly warranted to Plaintiffs, their predecessors-in-interest, and/or others that the work and services performed by them, and/or the materials supplied and/or manufactured by them, would be free from defects, constructed in a workmanlike manner, and fit for ordinary residential use and all such implied warranties were assigned to Plaintiffs.

55.     Plaintiffs relied on the skill and judgment of Danco to select and provide products, materials, goods, and to perform or have performed work suitable to improve, construct, maintain, protect, and repair the Apartment free from defects and fit for safe and ordinary residential use.

4884-1485-7864, v. 1

56.    Danco breached the implied warranties described above in that the Apartments, as constructed, including the plumbing system installed by Danco, do not conform to the foregoing warranties, contained defective and unsafe conditions, products and components, is not of good workmanlike quality, and is not free from faults and defects.

57.    The foregoing implied warranties were intended to and made for the benefit of Plaintiffs' predecessor-in-interest and all its successors-in-interest and assigns, including Plaintiffs, and the foregoing warranties were assigned to Plaintiffs.

58.    As a direct and proximate result of the breach of implied warranty, Plaintiffs have been damaged, and will continue to suffer damage, by the expenditure of certain monies for the repair, installation and/or replacement of the defects described above, and to rectify damage caused by or because of the defects, which sums shall be proven at trial.

FOURTH CAUSE OF ACTION
BREACH OF EXPRESS WARRANTY
(Against All Defendants)

59.    Plaintiffs incorporate herein by reference all allegations included in paragraphs 1-58.

60.    Defendants made express warranties, affirmations of fact, and/or promises (referred to as "warranties") to Plaintiffs and Plaintiffs' predecessors-in-interest, which related to the Apartments, and which became part of the basis of the

- 14 -

4884-1485-7864, v. 1

bargain made between the Plaintiffs and its predecessors-in-interest that the Apartments, including the fixtures and components therein, would conform to the warranties. Such warranties included, without limitation, that the Apartments would be built and/or conveyed free from construction and manufacturing defects, known defects, was fit for ordinary residential habitation, and in good, safe, working order, condition, and repair. Defendants further warranted that they would be liable for all construction and/or manufacturing defects and damages.

61.     Defendants, and each of them, breached the warranties described above in that the Apartments, including PEX and plumbing fixtures and components therein, do not conform to the foregoing warranties, contain construction, installation, and manufacturing defects and defective and unsafe conditions, are not of good quality construction, and are not free from faults and defects.

62.     Plaintiffs are informed and believe, and allege based on information and belief, that Defendants made affirmations of fact and/or promises to Plaintiffs and/or third parties, which related to the Apartment, that the Apartments would conform to said affirmations of fact and/or promises. These affirmations of fact and/or promises included, without limitation, that all labor, materials, tools, supplies, permits, licenses, supervision, observations, and services provided by each of the respective Defendants would be free from defects and completed, constructed, installed, manufactured or repaired in a good, safe, and workmanlike

- 15 -

4884-1485-7864, v. 1

manner, in conformity with approved plans, specifications, and manufacturing guidelines, and in conformity with all applicable codes, laws, regulations, ordinances and all standards of care applicable to the Defendants.

63.    Defendants breached the warranties to Plaintiffs described above in that the Apartments, including fixtures and components therein, do not conform to the foregoing affirmations of fact and/or promises, and Defendants were given timely notice of these failures.

64.    The foregoing warranties were intended to and made for the benefit of Plaintiffs' predecessor-in-interest and all of its successors-in-interest, including Plaintiffs, and the foregoing warranties were expressly assigned to Plaintiffs.

65.    As a direct and proximate result of these breaches of express warranties, and each of them, Plaintiffs have suffered actual and consequential damages, all in excess of the minimum jurisdictional amount of this Court in precise amounts to be proven at trial.

FIFTH CAUSE OF ACTION
STRICT PRODUCT LIABILITY
(Against Uponor)

66.    The Association incorporates herein by reference all allegations included in paragraphs 1-65.

67.    At all times material to this action, Uponor was in the process of designing, engineering, developing, testing, approving, manufacturing, fabricating, equipping, inspecting, repairing, labeling, advertising, promoting, marketing,

- 16 -

distributing, selling, and supplying PEX throughout the United States, including, in the State of Arizona.

68.   At the time the PEX left the control of Uponor, it was defective in design and manufacture and unreasonably dangerous to Plaintiffs and its residents, tenants, occupants, and other persons who might reasonably be expected to use the PEX as part of or in relation to the use of plumbing systems at the Apartments. These defects include, but are not limited to, the conditions described in this Complaint.

69.   The PEX was expected by Uponor to reach, and did reach, the Apartments without substantial change in the condition in which it was placed on the market and expected to be installed in the Apartments.

70.   Plaintiffs and their residents, tenants, occupants, and other persons using the Apartments reasonably expected to have PEX as part of the water plumbing system of the Apartments.

71.   The defects in the PEX caused by Uponor were a direct and proximate cause of damages suffered by Plaintiffs.

72.   Uponor is strictly liable to Plaintiffs for the damages caused by the defects and inadequacies in the design and manufacturer of PEX.

73.   Plaintiffs are informed and believe, and alleged based on information and belief, that Uponor was the manufacturer and distributor of products, materials, and goods used by their co-Defendants in the construction of the Apartments.

- 17 -

4884-1485-7864, v. 1

Plaintiffs are further informed and believe, and thereon allege, that Uponor defectively designed, manufactured, and distributed such products, materials, and goods by failing to prepare and disseminate adequate specifications for the installation, application and use of Defendants' products, materials, and goods; by failing to warn prospective installers, users and applicators of Defendants' products, materials, and goods of precautions to be taken in connection with the installation thereof; and by failing to employ adequate and reasonable quality control to ensure that such products, materials, and goods were without substantial defect. Defendants knew or, in the exercise of reasonable care, should have known that their products, materials, and goods would be used for ordinary consumer and residential purposes without substantial inspection by Plaintiffs.

74.    As a direct and proximate result of the defects in the Apartments, Plaintiffs have actual and consequential damages, all in excess of the minimum jurisdictional amount of this Court in precise amounts to be proven trial.

## SIXTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(Against Uponor)

75.    Plaintiffs incorporate herein by reference all allegations included in paragraphs 1-74.

76.    At all relevant times herein, Uponor manufactured and/or supplied the PEX with the PEX Defects, and prior to the time the defective PEX was installed in

4884-1485-7864, v. 1

the Apartments, Uponor impliedly warranted that its PEX was of merchantable quality and fit for the ordinary use for which it was intended.

77.     The PEX supplied by Uponor and installed at the Apartment was not fit for its intended use and was not of merchantable quality because of the defects in the PEX alleged herein.

78.     Uponor breached the implied warranty of merchantability, as the PEX supplied by Uponor and installed at the Apartments was not of a merchantable quality due to the defects alleged herein.

79.     As a direct and proximate result of Uponor's breach of said implied warranties, Plaintiffs have suffered, and will continue to suffer, damages as alleged herein in an amount to be determined at trial.

SEVENTH CAUSE OF ACTION
BREACH OF IMPLIED WARRANTY OF FITNESS FOR
A PARTICULAR PURPOSE
(Against Uponor)

80.     Plaintiffs incorporate herein by reference all allegations included in paragraphs 1-79.

81.     At the time the PEX was installed at the Apartment, Uponor had reason to know of the particular purpose for the PEX. Uponor impliedly warranted that its PEX was fit for the particular purpose in the Apartments.

82.     The implied warranties were intended to inure to the benefit of the end users, i.e., Plaintiffs and their predecessors-in-interest.

4884-1485-7864, v. 1

83.    Uponor breached the implied warranty because the PEX supplied by Uponor and installed in the Apartments was not fit for the particular purpose due to the defects alleged herein.

84.    As a direct and proximate result of Uponor's breach of said the implied warranties, Plaintiffs have suffered, and will continue to suffer, damages as alleged herein in an amount to be determined at trial.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiffs pray for judgment against Defendants as follows:

a.    For compensatory damages in an amount to be shown at trial, including but not limited to the cost of repairing all defective work and resultant damage, including lost rental income, as well as the cost of Plaintiffs' expert investigation required to prove the existence, nature, and cause of every defect, as well as the appropriate repair methodology, and the cost of performing those repairs;

b.    For punitive damages in an amount sufficient to punish Defendants and/or to deter the Defendants and others from similar misconduct in the future;

c.    For its reasonable attorneys' fees pursuant to the parties' contracts as appropriate and pursuant to A.R.S. § 12-341.01 as determined upon application to the Court;

4884-1485-7864, v. 1

d.    For its court costs pursuant to the parties' contracts as appropriate and pursuant to A.R.S. § 12-340;

e.    For pre- and post-judgment interest on all sums awarded; and

f.    For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 10th day of November, 2023.

HOLMGREN LAW FIRM, LLC


By: /s/ Mark Holmgren
      Mark A. Holmgren, Esq.
      1166 East Warner Road, Suite 101
      Gilbert, Arizona 85296
      (480) 385-7599
      mark@holmgrenlawfirm.com
      Attorney for Plaintiffs

4884-1485-7864, v. 1